United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTER-MARK USA, INC.,

Plaintiff,

v.

INTUIT, INC.,

Defendant.

_______________________________________/

No. C-07-04178 JCS

**ORDER GRANTING INTUIT INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6) [Docket No. 8]**

## I. INTRODUCTION

On August 15, 2007, Plaintiff Inter-Mark USA, Inc. ("Inter-Mark") filed this purported class-action against Defendant Intuit, Inc. ("Intuit") asserting claims for breach of contract, breach of implied warranty of merchantability, violation of California Bus. & Prof. Code Sections 17500 and 17200, and negligence in connection with Inter-Mark's purchase of Intuit's "QuickBooks" software. Intuit brings a Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Rule 12(b)(6) ("the Motion"), which came on for hearing on Friday, February 8, 2008. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Motion is GRANTED. Plaintiff's Complaint is dismissed with leave to amend.

## II. BACKGROUND

### A. The Complaint[1]

Inter-Mark brings this purported class action against Intuit on behalf of all present and former customers of Intuit who purchased QuickBooks Enterprise Solutions Version 6.0 (the "Software") from 2005 to the present. Complaint ¶ 1.

Defendant Intuit was founded in 1983. Complaint ¶ 10. It develops and sells software to help small businesses and consumers manage their finances, including QuickBooks. Complaint ¶ 10. QuickBooks is designed to make accounting easier for small businesses. Complaint ¶ 15. QuickBooks tracks sales and expenses, organizes finances, creates invoices and reports, monitors business performance, manages customer, vendor and employee data, and performs advanced accounting and inventory functions. Complaint ¶ 15. It is marketed as being easy to install and set up and as being accessible to multiple users within a business. Complaint ¶ 16.

QuickBooks Enterprise Solutions is an advanced version of QuickBooks that is made specifically for small businesses with advanced accounting needs. Complaint ¶ 17. "Intuit claims that the benefits of Enterprise Solutions include tracking over 100,000 inventory items, customers or vendors, instantly running financial reports, tracking income and expenses, creating financial statements, sending estimates, invoices and sales orders, managing payroll and paying vendors." Complaint ¶ 17. Intuit develops and markets updated versions of Enterprise Solutions each year. Complaint ¶ 19. Enterprise Solutions 6.0 became available to consumers in October 2005. Complaint ¶ 20. The cost of Enterprise Solutions ranges from $3,000 to $6,000, depending on the number of users. Complaint ¶ 21.

In a 2005 press release, Intuit stated, "[t]he new release of Enterprise Solutions [6.0] gives mid-sized companies robust performance and increased functionality, but with the same easy-to-use interface that has made QuickBooks the number one accounting solution in the small business market." Complaint ¶ 23. In another press release, Intuit stated that its "award-winning

---

[1] For the purposes of this Motion, the Court accepts Plaintiff's allegations of fact as true. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

QuickBooks 2006, the most significant update to the nation's leading small business management software, is now available online and at retail stores nationwide. In addition to new features and an easier to use interface, QuickBooks 2006 includes new services that will help customers get the most out of QuickBooks." Complaint ¶ 24.

According to Inter-Mark, "Intuit also claims the Enterprise Solutions program included the following improvements over previous versions:"

> - new enhancements across most QuickBooks editions, including a new SQL database, allow your clients with larger, growing businesses to run their businesses more efficiently and flexibly;
> - improved speed and capacity allows growing businesses to scale up to simultaneous users with 200% faster performance;[2]
> - improved advanced functionality for clients to manage their growth with over 120 customizable reports and the ability to perform in-depth financial analyses, track and view inventory in greater detail, customize permissions for over 115 activities for greater security and much more; and
> - improved flexibility working with other software allows your clients to access their QuickBooks data with ODBC compliant applications such as Crystal Reports, Microsoft Excel and Access.

Complaint ¶ 25.

Inter-Mark purchased Enterprise Solutions Manufacturing & Wholesale Edition 6.0 on November 5, 2005. Complaint ¶ 26. It installed the software on January 1, 2006. Complaint ¶ 26. Inter-Mark was not aware of any problems with the software until it was installed. Complaint ¶ 26. Inter-Mark's network system met the requirements set forth by Intuit for running Enterprise Solutions 6.0. Complaint ¶ 29. Nonetheless, Inter-Mark had "numerous problems using and implementing the Software." Complaint ¶ 30. For example, in April or May of 2006, Inter-Mark became aware that as data was added into the Software, the program could not process that data without "inordinate delays." Complaint ¶ 30. Further, Inter-Mark issues up to 100 invoices a day and relied heavily on the Enterprises Solutions software to generate them, but it took an

[2] This statement is taken verbatim from Plaintiff's Complaint. It appears to be missing a number between the words "to" and "simultaneous."



United States District Court
For the Northern District of California

"unreasonable and inappropriate amount of time" to generate the invoices. Complaint ¶ 31. As a result, it became evident to Inter-Mark that the Software did not function quickly and efficiently, as represented by Intuit. Complaint ¶ 31. According to Inter-Mark, a related problem with the Software, which was concealed by Intuit even though the problem was known to it, was that when the Software was used to generate an invoice, it locked other employees out of the system. Complaint ¶ 32.

Although Intuit sent members of its Consultant Team to Inter-Mark to try to address the problems Inter-Mark was experiencing, "they were unable to make the program work satisfactorily and in accordance with [Intuit's] representations and contractual obligations." Complaint ¶ 39.

Based on these factual allegations, Plaintiff asserts the following claims:

**Claim One**: Breach of Contract based on the "the contract between Plaintiff and the Class and Defendant contained in the implied Duty of Good Faith and Fair Dealing." Complaint ¶ 53.

**Claim Two**: Violation of Implied Warranty of Merchantability, based on California Commercial Code Section 2314 and the allegations that "the Software was not merchantable as required by law in that it would not pass without objection in the trade under the contract description, was not of fair average quality, was not fit for the ordinary purpose for which the Software was used, did not conform with promises made on the label with respect to the Software's performance and the hardware and software needs of the computer systems to run the Software." Complaint ¶ 58. This claim is based on the further allegation that to the extent Intuit sought to exclude the implied warranty of merchantability, the exclusion was "not sufficiently 'conspicuous' as required by California Commercial Code Section 2316(2)" and the exclusion is unconscionable. Complaint ¶ 59. In addition, Plaintiff alleges that the express and limited remedy to customers who are not 100% satisfied with the QuickBooks Software of returning the software for a full refund within 60 days of purchase fails of its essential purpose because: 1) the 60-day time period is unreasonably short; 2) defects in the software are not immediately apparent and only become obvious with continued use; 3) Intuit's customer service program "lulls the customer into the expiration of the 60 day 'window;'" and 4) the remedy of a refund is insufficient given the costs of switching to a new software package. Complaint ¶¶ 61-64.

**United States District Court**
For the Northern District of California

**Claim Three**: Violation of California Business and Professions Code Section 17500 based on the allegation that Intuit used false advertising to sell its QuickBooks Software.

**Claim Four**: Violation of California Business and Professions Section 17200 based on alleged unfair, unlawful or fraudulent business practices.

**Claim Five**: Negligence, based on allegation that Intuit sold Enterprise Solutions "without properly testing the product before making it available to the public."

Inter-Mark seeks direct an consequential damages on all five claims. Complaint at 16. In addition, it seeks exemplary damages and restitution of "all amounts lost" on its Sections 17200 and 17500 claims and exemplary damages as to its negligence claim.

**B. The Motion**

Intuit argues that all of Plaintiff's claims fail as a matter of law under Rule 12(b)(6) of the Federal Rules of Civil Procedure and therefore, the Complaint should be dismissed. With respect to Claim One, for breach of contract, Intuit argues that the claim fails because Inter-Mark has not identified any particular contractual provision, or even any specific contract. To the extent that the claim is based on the end-user license agreement ("the Software License Agreement") that every customer must accept before installation – of which Intuit requests judicial notice – Plaintiff has not identified the specific obligation allegedly breached and therefore it is impossible to know how Intuit is supposed to have breached any implied covenant of good faith and fair dealing that may exist.

With respect to Claim Two, for breach of the implied warranty of merchantability, Intuit asserts that this claim fails because there is a conspicuous and valid disclaimer in the Software License Agreement that satisfies the requirements of California Commercial Code Section 2316. In particular, the Software License Agreement contains the following disclaimer:

> **DISCLAIMER OF WARRANTIES**: EXCEPT AS PROVIDED ABOVE, THIS SOFTWARE AND ANY RELATED SERVICES OR CONTENT ACCESSIBLE THROUGH THE SOFTWARE ARE PROVIDED "AS-IS," AND TO THE MAXIMUM PERMITTED BY APPLICABLE LAW, INTUIT DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, REGARDING THIS SOFTWARE, DISKS, RELATED MATERIALS AND ANY SERVICES OR CONTENT, INCLUDING

THEIR FITNESS FOR A PARTICULAR PURPOSE, SECURITY, THEIR MERCHANTABILITY, OR THEIR NONINFRINGEMENT.

INTUIT DOES NOT WARRANT THAT THE SOFTWARE OR ANY RELATED SERVICES OR CONTENT IS FREE FROM BUGS, VIRUSES, ERRORS, OR OTHER PROGRAM LIMITATIONS OR CONTENT OR DATA THROUGH THE SOFTWARE OR CONTINUED ACCESS TO THE TRIAL VERSION OF THE SOFTWARE OR TO THE DATA ENTERED INTO THE TRIAL VERSION OF THE SOFTWARE AFTER THE SPECIFIED PERIOD OF TIME ALLOWED USE. SOME STATE DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU. IN THAT EVENT ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO SIXTY (60) DAYS FROM THE DATE OF PURCHASE OF THE SOFTWARE. . . .

Declaration of Angus Thomson in Support of Defendant Intuit Inc.'s Motion to Dismiss and Request for Judicial Notice ("Thomson Decl."), Ex. A (Software Licensing Agreement) at 4-5.

Further, to the extent Claim Two is based on the allegation that the full refund remedy fails of its essential purpose, Intuit argues that this claim is deficient because Inter-Mark did not exercise its rights under the warranty provision by requesting a refund and there is no allegation that Intuit would have refused to give one. In addition, Intuit points to a provision in the Software License Agreement that limits its liability where a remedy set forth in that agreement is "found to have failed of its essential purpose." In particular, in a section entitled "LIMITATION OF LIABILITIES AND DAMAGES," it is stated as follows:

THE ENTIRE LIABILITY OF INTUIT AND ITS REPRESENTATIVES (AS DEFINED BELOW) FOR ANY REASON SHALL BE LIMITED TO THE AMOUNT PAID BY THE CUSTOMER FOR THE SOFTWARE AND, IF YOU HAVE A SUBSCRIPTION TO AN INTUIT PAYROLL SERVICE, UP TO THREE (3) MONTHS OF ANY INTUIT PAYROLL SERVICE UNLESS OTHERWISE SEPARATELY AGREED. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, INTUIT . . . [IS] NOT LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES . . . , WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE0, PRODUCT LIABILITY OR OTHERWISE . . . EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. . . .

*Id*. at 5.



United States District Court
For the Northern District of California

Intuit argues that both Claims Three and Four, for false advertising and unfair competition, are deficient because Inter-Mark has not alleged sufficient facts to support them. In particular, as to the false advertising claim, Intuit asserts that Inter-Mark has failed to identify any specific untrue or misleading statements. Further, the only statements that are identified in the Complaint, Intuit asserts, are mere "puffing," which is not actionable under Section 17500. Nor does the Complaint include allegations that show Intuit had any knowledge that the identified statements were untrue. Similarly, as to the false advertising claim, Intuit argues, Inter-Mark has not alleged a violation of Section 17200 because it has not identified any business practice that is unfair under *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006). Further, Intuit argues, Inter-Mark has not identified any unlawful business practice or any fraudulent, deceptive or misleading business practice. Also, to the extent the Sections 17200 and 17500 claims are based on the claims for breach of contract and breach of implied warranty of merchantability, Defendants argue, these claims fail for the same reason those claims fail.

Finally, Intuit argues that Plaintiff's Third, Fourth, and Fifth Causes of actions fail because all of these tort claims are barred under the economic loss doctrine. Under that doctrine, tort law does not give rise to liability where a product causes only economic loss and does not give rise to any bodily injury or physical damage to other property.

In its Opposition, Inter-Mark makes the following arguments. With respect to Claim One, Inter-Mark argues that the contract – which it agrees is the Software License Agreement provided by Intuit in support of its Motion – is sufficient to support an implied duty of good faith and fair dealing because "[i]f the implied duty of good faith means anything at all, then in this context it clearly means that the Plaintiff and the Class are entitled to get the benefit of their bargain with a product that works as represented and is sold with a 'satisfaction guarantee.'" Opposition at 6. Inter-Mark asserts that the cases requiring identification of a specific contractual provision in support of a breach of contract claim that Intuit cited, such are *Love v. The Mail on Sunday*, 2006 WL 4046180 (C.D. Cal. August 15, 2006), are not on point because the nature of the alleged breach is obvious here.



United States District Court
For the Northern District of California

Inter-Mark argues as to Claim Two, for violation of the implied warranty of merchantability, that the adequacy of this claim cannot be decided on a motion to dismiss because the enforceability of the disclaimers of warranties in the Software License Agreement turns on questions of fact. In particular, Inter-Mark argues, there are questions of fact as to whether the disclaimers were sufficiently conspicuous because Inter-Mark contends the disclaimers were on a "submerged page" and moreover, it may not have even seen the Software License Agreement. Inter-Mark further asserts that there are factual questions regarding the adequacy of the remedy contained in the contract.

With respect to Claims Three and Four, for violations of Sections 17200 and 17500, Plaintiff asserts that these claims are pled with "reasonable" particularity, as required under Rule 8 of the Federal Rules of Civil Procedure, and therefore, these claims are sufficient. Inter-Mark points to statements alleged in the Complaint regarding system requirements and representations regarding customer service, arguing that these statements were not mere puffery but rather, objective and specific statements.

Finally, Inter-Mark argues that the economic loss doctrine does not apply to its claims under Sections 17200 and 17500 of the California Business and Professions Code. Inter-Mark does not dispute that the doctrine bars its negligence claim (Claim Five).[3]

## III. ANALYSIS

### A. Legal Standard Applicable to Rule 12(b)(6) Motions

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

---

[3] Because Inter-Mark does not oppose the Motion as to Claim Five, or offer any theory under which Claim Five might be viable, the Court dismisses that claim with prejudice.

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1969 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. at 1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

The Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Gordon v. Impulse Mktg. Group, Inc.*, 375 F. Supp. 2d 1040, 1044 (E.D. Wash. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id*. at 1044. The Court may also consider documents of which it has taken judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Inter-Mark has not objected to Intuit's request for judicial notice of the Software License Agreement. Therefore, the Court grants Intuit's request and finds that it may consider the Software License Agreement on this Rule 12(b)(6) motion even though it was neither cited in nor attached to the Complaint.

United States District Court
For the Northern District of California

### B. Claim One (Breach of Contract)

Intuit asserts that Plaintiff's breach of contract fails because Inter-Mark has not identified the specific contractual provision from which the duty of good faith and fair dealing that was allegedly breached arose. The Court agrees.

To state a claim for breach of contract, a plaintiff must allege the existence of a valid contract, performance of that contract by the plaintiff, defendant's breach and damages. *In re Leisure Corp.*, 2007 WL 607696 (N.D. Cal. Feb. 23, 2007) (citing *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)). In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged. *Love v. The Mail on Sunday*, 2006 WL 4046180 *7 (C.D. Cal. Aug. 2006) (dismissing breach of contract claim on motion to dismiss where complaint did not identify any specific contractual provision from which the implied convenant of good faith and fair dealing arose). As the court explained in *Love*,

> "The obligations imposed by the covenant of good faith and fair dealing are not those set out in the term of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged-fairly and in good faith." *Koehrer v. Sup. Ct.*, 181 Cal. App.3d 1155, 1169, 226 Cal. Rptr. 820 (4th Dist., 1986). "However, what that duty embraces is dependent upon the nature of the bargain struck between the [parties] and the legitimate expectations of the parties which arise from the contract." *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 918, 164 Cal. Rptr. 709, 610 P.2d 1038 (1980). Further, "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992).

2006 WL 4046180 *7 (C.D. Cal. Aug. 2006).

Here, Inter-Mark has not identified any specific contractual provision in support of its breach of contract claim. As a result, its allegation that Intuit breached an implied covenant of good faith and fair dealing is nothing more than a bare legal assertion, supported by no factual allegations. This is insufficient to meet even the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, the Court concludes that Inter-Mark has failed to state a claim for breach of contract in its Complaint.

United States District Court
For the Northern District of California

Further, the Court is not persuaded by Inter-Mark's conclusory assertion that *Love* is not on point. Inter-Mark suggest that in this case, in contrast to *Love*, it is somehow obvious that the Software License Agreement gives rise to an implied covenant of good faith and fair dealing whereby Inter-Mark is entitled to the benefit of its bargain with Intuit. As the California Supreme Court explained in *Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." 2 Cal. 4th 342, 373 (1992) (citations omitted). The implied covenant of good faith and fair dealing is intended to "protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id*. (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988). Inter-Mark has failed to include any allegations in its Complaint that show that its breach of contract claim is based on anything more than a general public policy interest. As such, the claim fails as a matter of law. Inter-Mark shall be given leave to amend Claim One.

**C. Claim Two (Breach of Implied Warranty of Merchantability)**

**1. Disclaimer of Implied Warranty of Merchantability**

Defendants assert that to the extent Claim Two is based on an alleged breach of an implied warranty of merchantability, the claim fails because the Software License Agreement contains a valid disclaimer of any implied warranties. The Court agrees.

Under California Commercial Code Section 2316(2), an implied warranty of merchantability may be excluded in a written document in which the disclaimer is conspicuous and mentions merchantability. Further, California Commercial Code Section 2316(3)(a) provides that "all implied warranties are excluded by expressions like 'as is,' . . . or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." Whether a provision is conspicuous is a question for the court. Cal. Commercial Code Section 1201(1). The California Commercial Code provides the following definition of "conspicuous":

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it. Whether a term is " conspicuous" or

not is a decision for the court. Conspicuous terms include the following:

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Cal. Comm. Code Section 1201(10). In making the determination as to whether a provision is conspicuous, the court must "review the conspicuousness of the disclaimer in the context of the entire contract, and in light of the sophistication of the parties." *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 860 (N.D. Cal. 2000) (citing *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp., Inc.*, 890 F.2d 108, 114 (9th Cir. 1989).

Here, the disclaimer in the Software License Agreement is printed in all capital letters, with the title "DISCLAIM OF WARRANTIES" in bold-face type. It is found on the fourth and fifth pages of a ten-page contract. Only two other provisions in the contract are in all capital letters and therefore, the disclaimer stands out visually. In addition, nothing in the allegations of the Complaint suggests that Inter-Mark – a business customer rather than an individual purchaser – is so unsophisticated that it would not have noticed this disclaimer or appreciated its significance. Therefore, the Court concludes, as a matter of law, that the disclaimer meets the requirement that it must be conspicuous. Further, the disclaimer uses the "as is" language that the California legislature has indicated disclaims implied warranties. Thus, assuming the contract as a whole is enforceable, the Court concludes that the disclaimer bars Inter-Mark's claim for breach of implied warranty of merchantability.

A separate question, however, is whether Inter-Mark is bound by the Software License Agreement in the first instance. Inter-Mark argues that this a factual question that cannot be resolved on summary judgment, citing *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002). In *Specht*, the Court held that an arbitration clause in an on-line license agreement was unenforceable because the license agreement was located on the defendant's web-page below the button provided for users to down-load software and would have required users to scroll down the



United States District Court
For the Northern District of California

page to find the license agreement. *Id*. at 20. As a result, the court concluded, a reasonably prudent Internet user would not have seen the license agreement before downloading the defendant's software. *Id*. Therefore, the plaintiff did not, by downloading the defendant's software, manifest assent to the terms of the license agreement in that case and was not contractually bound to arbitrate its dispute with the defendant. *Id*.; *see also Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa.) (holding on summary judgment that "clickwrap" agreement was enforceable and noting that in addressing this question courts apply "traditional principles of contract law and focus on whether the plaintiff had reasonable notice of an manifested assent to the clickwrap agreement").

The Court is not persuaded by Inter-Mark's position because the complaint contains no allegations – either factual or legal – suggesting that the Software License Agreement is unenforceable. Instead, Inter-Mark has conceded that the Software License Agreement is valid and has not objected to the Court taking judicial notice of the copy of the agreement that is attached to Plaintiff's request for judicial notice. Plaintiff also conceded at oral argument that it has no evidence that the disclaimer that Inter-Mark saw on-line was any different from the one that has been provided to the Court. In the face of an enforceable contract that contains a valid and conspicuous disclaimer of all implied warranties of merchantability, dismissal of the this claim is appropriate. *See Dart Enery Corp., Inc. v. Vogel*, 1999 WL 11010342 (W.D. Mich. July 18, 1991) (dismissing claim for breach of implied warranty of merchantability despite plaintiff's assertion that the underlying contract was fraudulently induced and therefore unenforceable on grounds that plaintiffs had not alleged a claim for negligent or fraudulent misrepresentation). Further, Inter-Mark has offered no evidence or argument that persuades the Court the claim can be saved by amendment. Accordingly, this claim is dismissed with prejudice.[4]

**D. Claim Three (Violation of Cal. Bus. & Prof. Code § 17500)**

Intuit argues that Defendant's false advertising claim fails because no specific statements are identified in the claim and the marketing statements quoted in the factual allegations of the

[4] Because the Court finds that Inter-Mark's claim fails on the basis of the disclaimer, it need not reach the question of whether the 90-day return provision fails of its essential purpose.



United States District Court
For the Northern District of California

Complaint are non-actionable puffery. The Court agrees.

Section 17500 of California's Business and Professions Code makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code Section 17500. This provision has been "interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985). Whether the public actually has been or will be misled for purposes of a claim under the false advertising law is, in general, a factual question that cannot be resolved on a motion to dismiss. *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998). However, "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)).

The degree of particularity required in pleading a Section 17500 claim depends on the nature of the allegations in the claim. In particular, although fraud is not an essential element of a Section 17500 claim, where a plaintiff alleges fraud as the basis for a violation of that provision, the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to the fraud allegations. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003). If that requirement is not met, the court must disregard the fraud allegations to determine whether a claim has been stated under the notice pleading standards of Rule 8(a). Under that standard, a Section 17500 claim need be alleged only with "reasonable particularity." *See Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Defendant argues that Plaintiff's Section17500 claim is based on alleged fraud, pointing to the allegation of a "scheme" in paragraph 68 of the Complaint and the allegation that Defendant acted "knowingly, willfully, and maliciously" in paragraph 72 of the Complaint. On this basis, Defendant asserts that the heightened pleading standard of Rule 9(b) should be applied to this claim. While the Court is doubtful that these allegations amount to fraud allegations, it need not resolve the

question of whether a heightened standard applies because Plaintiff has not met the more liberal requirements of Rule 8. In the claim, Plaintiff refers only to unspecified "commercial advertisements" and "a variety of promotional materials." Because Plaintiff does not identify any specific statements, this claim does not provide adequate notice to Defendant of the alleged wrongful conduct.

To the extent that Plaintiff seeks to rely on the statements contained in its press releases quoted in paragraphs 23-25 of the Complaint (see above), these statements are mere puffery, touting the "improvements" and "enhancements" in Intuit's Software without making any verifiable factual representations. It is possible that Plaintiff will be able to state a Section 17500 claim based on statements regarding system requirements for running the Software or Intuit's customer service. As currently pled, however, these representation are not alleged to be false or misleading. The Court dismisses this claim with leave to amend to clearly identify the specific statements on which the claim is based, consistent with the discussion above.

**E. Claim Four (Violation of Cal. Bus. & Prof. Code Sections 17200 et seq.)**

Defendants argue that Plaintiff's Section 17200 claim also fails as a matter of law because Inter-Mark has not adequately alleged any "unfair," "unlawful" or "fraudulent" business practice. The Court agrees.

California Business & Professions Code Sections 17200 *et seq.* prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." To establish a violation of Section 17200, a plaintiff may establish a violation under any one of these prongs. An unlawful business practice is one that is "prohibited by law, where possible sources of law are defined broadly." *Multimedia Patent Trust v. Microsoft Corp*., 2007 WL 2696675 (S.D. Cal. September 10, 2007) (citation omitted). A business practice is unfair, where the plaintiff is a consumer rather than a competitor, where the injury caused by the allegedly unfair business practice: a) is substantial; b) is not outweighed by any countervailing benefits to consumers or to competitors; and c) could not reasonably have been avoided. *Camacho v. Auto. Club of S. Cal*., 142 Cal. App. 4th 1394, 1403 (2006). Finally, "a 'fraudulent' practice is defined more broadly than common law fraud



United States District Court
For the Northern District of California

and only requires a showing that "members of the public are likely to be deceived." *Multimedia Patent Trust v. Microsoft Corp.*, 2007 WL 2696675 at * 11 (citations omitted).

Here, Inter-Mark does not dispute that its allegations do not satisfy the requirements for establishing an unfair or unlawful practice. Rather, it asserts that it satisfies the "fraudulent" prong of Section 17200, essentially duplicating the Section 17500 claim. For the reasons that the Section 17500 claim fails, so does the Section 17200 claim. Plaintiff shall be granted leave to amend as to this claim.

**F. Economic Loss Rule**

Finally, Defendant argues that Plaintiff's Sections 17200 and 17500 claims fail for the additional reason that these are essentially tort claims and under the economic loss doctrine, such claims may not be asserted on the basis of pure economic loss without physical injury or property damage. *See Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 294 (1984) (holding that strict liability in tort did not apply where claim alleged only economic loss because claim was governed by Uniform Commercial Code). Intuit does not cite to any California decision in which a court has held as much but rather, to a decision in which the court held that an Arizona unfair competition claim was barred because, under Arizona law, the unfair competition claim sounded in tort. *See QC Constr. Prods., LLC v. Cohill's Bldg. Specialities, Inc.*, 423 F. Supp. 2d 1008, 1015-16 (D. Ariz. 2006); *see also AOL v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459 (E.D. Va. 2002) (dismissing tort claims as well as claims that defendants violated "various State Consumer Protection Acts" under Virginia law based on economic loss rule without discussing reasons for extending rule to consumer protection laws).

The Court does not find any case law that suggests that the California Supreme Court would extend the economic loss rule to Sections 17200 or 17500 claims. To the contrary, as Inter-Mark has noted, the California Supreme Court has distinguished such claims from tort claims, characterizing them as "an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff . . . through unfair or unlawful business practices [and which] is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000).

Inter-Mark has conceded, however, that its remedy under these sections is limited to restitution of money lost – in this case, the money that was spent on the Intuit Software. Thus, to the extent the Complaint seeks damages, such remedies are not available to Inter-Mark on these claims.

**IV. CONCLUSION**

For the reasons stated above, the Motion is GRANTED and the Complaint is DISMISSED with leave to amend. Plaintiff shall be permitted to amend all of its claims except Claim Two, which is dismissed with prejudice. Plaintiff's amended Complaint shall be filed by February 29, 2008.

IT IS SO ORDERED.

Dated: February 27, 2008

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
For the Northern District of California